# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JAMES SHAFFER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-00601-NKL |
| | ) |
| HEALTH ACQUISITION COMPANY, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are defendants Health Acquisition Company, LLC ("HAC"), Empower H.I.S., LLC, Paul L. Nusbaum, Steven F. White, and Jorge A. Perez's motion to dismiss, Doc. 29, and plaintiffs James and Phyllis Shaffer's motion for leave to amend the First-Amended Complaint, Doc. 36. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court defers ruling on Plaintiffs' motion to amend.

## I. Background

Plaintiff shareholders James and Phyllis Shaffer bring this suit derivatively on behalf of HMC/CAH Consolidated, Inc. ("HMC"), a Delaware corporation. Prior to filing suit, Plaintiffs made demand on HMC, and the Board of Directors declined to pursue claims against the Defendants. Doc. 21 (First-Amended Complaint), ¶ 4; Doc. 21-1 (April 26, 2018 Response to Demand).

Until March 29, 2017, HMC was the owner of 100% of the member and shareholder interests in ten acute care rural community hospitals, collectively referred to by the parties as the "HMC Hospitals." Plaintiffs allege that Defendants formed a conspiracy to deprive HMC of its

majority interest in the HMC Hospitals and to use the HMC Hospitals in an illegal billing scheme, thereby decreasing the value of HMC's ownership interest in the HMC Hospitals. Plaintiffs allege that defendants Nusbaum and White, individually and on behalf of HAC, as well as defendant Perez, individually and on behalf of Empower H.I.S., made certain false representations and intentionally concealed or suppressed material facts during a March 2017 presentation to the HMC Board, which led to HMC's execution of a Conversion Agreement, by which HAC assumed an 80% controlling interest in the HMC Hospitals. Plaintiffs also allege breaches of fiduciary duties of care and loyalty by defendants Nusbaum, White, Perez, and HAC, conversion of HMC bank accounts by all Defendants, and breach of contract by defendant HAC. Lastly, Plaintiffs seek accounting from each of the HMC Hospitals.

## II.     Motion to Dismiss

Defendants advance a number of arguments in their motion to dismiss, including that (a) Plaintiffs lack standing to assert claims on behalf of the HMC Hospitals and/or that the HMC Hospitals are indispensable parties; (b) the Court lacks personal jurisdiction over Defendants; (c) venue is improper; (d) the economic loss doctrine bars Plaintiffs' tort claims; and (e) Plaintiffs fail to plead fraud with sufficient particularity.

### A.  Standing

Defendants assert that the First-Amended Complaint "appears to be a 'double' or 'triple' derivative action, for which the Plaintiffs have no standing." Doc. 30 (Suggestions in Support of Motion to Dismiss), p. 11.[1]  In other words, Defendants argue that Plaintiffs' claims are for a cause

---

[1] On January 11, 2019, the Court held oral argument on Defendants' motion to dismiss and permitted the parties to file supplemental briefing to address Plaintiffs' standing. Doc. 43. The Court now considers the arguments and authorities included in the supplemental briefing provided by the parties, in deciding Defendants' motion, Docs. 46 (Plaintiffs' Supplemental Memorandum) and 47 (Defendants' Supplemental Memorandum). However, the Court will not consider

of action belonging to one or more of HMC's subsidiaries—the HMC Hospitals—and that Plaintiffs were divested of standing to seek derivative action on behalf of the HMC Hospitals when HAC assumed an 80 percent interest in the HMC Hospitals.[2] In a derivative action, a stockholder asserts a cause of action belonging to the corporation; in a double derivative suit, a stockholder of a parent corporation seeks to recover for a cause of action belonging to a subsidiary. *Lambrecht v. O'Neal*, 3 A.3d 277, 281–82 (Del. 2010). In a triple derivative action a stockholder of a parent corporation seeks to "enforce a cause of action of a subsidiary of a subsidiary." *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas*, S.A., 34 A.3d 1074, 1079 n.7 (Del. 2011) (quoting 13 Fletcher Cyc. Corp. § 5977). The underlying basis for this multi-tier derivative standing "is the parent's ability to 'enforce [the subsidiary's] claim by the direct exercise of [the parent's] 100 percent control' of the subsidiary." *Id.* at 1080 (quoting *Lambrecht*, 3 A.3d at 288).

Plaintiffs assert eight separate claims against the Defendants. Plaintiffs' standing to sue derivatively must derive from their ownership of shares of HMC, because HMC is the only corporation in which Plaintiffs own shares. *Lambrecht*, 3 A.3d at 282. Thus, the question is whether Plaintiffs' claims are for a cause of action belonging to HMC or to its subsidiaries, the HMC Hospitals. The Court must ask—"[w]ho suffered the alleged harm" and "who would receive

---

Defendants' argument, raised for the first time in the supplemental briefing, that Plaintiffs have "an actual, disqualifying conflict of interest," Doc. 47, pp. 8–9, prohibiting them from serving as derivative representatives for HMC. *See Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608, n.4 (8th Cir. 2004) ("We will not consider an issue first raised in a reply brief, absent some reason given by the appellant for failing to raise and brief the issue in his opening brief.").

[2] Defendants similarly argue that the HMC Hospitals, are all indispensable parties under Federal Rule of Civil Procedure 19 because "a derivative claim requires the entity to be named as a party." Doc. 30, p. 9. Defendants assert that "[w]ithout naming the HMC Hospitals, any activity derivative to such entities is not properly alleged in the Complaint." *Id.* The Court addresses this argument by turning to the question of whether Plaintiffs have standing to assert the claims in the First-Amended Complaint.

the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).

### 1. Conspiracy, Fraud, and Breach of Contract (Counts I–III and VII)

Plaintiffs seek to recover for "the decrease in the value of [HMC's] ownership interest in the HMC Hospitals" as a result of Defendants' alleged conspiracy to "deprive HMC of its ownership and control of the HMC Hospitals" and "to use the HMC Hospitals as instrumentalities in [an] illegal billing scheme" (Count I). Doc. 21, ¶¶ 98, 103. Additionally, Plaintiffs allege that Defendants made fraudulent misrepresentations and/or omissions to the HMC Board (Counts II and III), and that HAC breached the Conversion and Transition Agreements and Amended Operating Agreements between HMC and HAC (Count VII).

Each of these claims is a cause of action belonging to HMC. This is true, notwithstanding the fact that some of Plaintiffs' claims could be characterized as claims for loss derived indirectly from the loss suffered by the HMC Hospitals. *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 176 (Del. 2015) (concluding plaintiff who was party to a contract could sue to enforce its contractual rights, notwithstanding the fact that plaintiff's injury derived indirectly from loss stuffed by plaintiff's subsidiaries). Plaintiffs have alleged that HMC suffered harm as a result of Defendants' false statements and breach of contract and seek to recover damages to compensate HMC for "the decrease in value of [HMC's] ownership interest in the HMC Hospitals" and "damage to [HMC's] business reputation" as a result of Defendants' conduct. Doc. 21, ¶ 103. Defendants do not contest that Plaintiffs have been and continue to be shareholders of HMC, nor do they contest that Plaintiffs have satisfied their demand requirements in order to institute suit on behalf of HMC. Doc. 21, ¶ 4. Thus, Plaintiffs have standing to assert their claims in Counts I, II, III, and VII.

4

## 2. Breach of Fiduciary Duty (Counts IV and V)

Plaintiffs also allege that defendants Nusbaum, White, and Perez, as Managing Directors of the HMC Hospitals, and HAC, as majority member/shareholder of the HMC Hospitals, breached their fiduciary duties of care and loyalty to the HMC Hospitals and to HMC (Counts IV and V). To assert a claim for breach of fiduciary duty, Plaintiffs must first show that Defendants owed a duty to HMC. *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015). Plaintiffs assert that the source of Defendants' fiduciary duties is two-fold—statutory, derived from the Delaware Limited Liability Company Act ("LLC Act"), and contractual, memorialized by the various Amended Operating Agreements for each of the HMC Hospitals.[3]

The LLC Act provides that "[i]n any case not provided for in this chapter, the rules of law and equity relating to fiduciary duties . . . shall govern." Del. Code tit. 6, § 18-1104. Section 18-1101(c) "permits LLC contracting parties to expand, restrict, or eliminate duties, including fiduciary duties, owed by members and managers to each other and to the LLC." *Kelly v. Blum*, No. CIV.A. 4516-VCP, 2010 WL 629850, at *10 (Del. Ch. Feb. 24, 2010). However, "[d]rafters

---

[3] Plaintiffs assert that HMC and HAC executed Amended Operating Agreements that are "substantively the same" for each of the HMC Hospitals. Doc. 21, ¶ 27. Plaintiffs attached to the First-Amended Complaint the Amended Operating Agreement executed by HMC and HAC for CAH Acquisition Company #1, LLC (one of the HMC Hospitals) to act as an exemplar. Doc. 21-4 (Amended Operating Agreement), p. 1. In relevant part, the Amended Operating Agreements provide:

> Each Managing Director shall exercise their responsibility and duties to the Company with the highest level of fiduciary duty of care and loyalty to the Company, in a prudent business manner, and will take all actions and make all votes in good faith consistent with such duties. Each Managing Director must discharge his duties in good faith, and in a manner that the Managing Director reasonably believes to be in the best interest of the Company.

*Id.* at p. 5, § 4.1(b).

of an LLC agreement must make their intent to eliminate fiduciary duties plain and unambiguous." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012) (quotations omitted). Delaware courts interpreting these provisions have concluded that "in the absence of a contrary provision in the LLC agreement, LLC managers and members owe traditional fiduciary duties of loyalty and care to each other and to the company." *Kelly*, 2010 WL 629850, at *10. (quotations omitted); *see also Feeley*, 62 A.3d 649, 661 ("[T]he Delaware [LLC Act] contemplates that equitable fiduciary duties will apply by default to a manager or managing member of a Delaware LLC."). "Thus, unless the LLC agreement in a manager-managed LLC explicitly expands, restricts, or eliminates traditional fiduciary duties, managers owe those duties to the LLC and its members and controlling members owe those duties to minority members." *Kelly*, 2010 WL 629850, at *10.

Because Defendants point to no provision of the Amended Operating Agreements that restricts or eliminates these default duties, the Court finds that Plaintiffs have standing to assert their claims for breach of fiduciary duties owed to HMC (the minority member of the HMC Hospitals) by HAC (the controlling member) and Nusbaum, White, and Perez (the managers).[4] To the extent, however, that Plaintiffs seek to recover for breaches of "fiduciary duties to the HMC Hospitals," Doc. 21, ¶ 120, they lack standing. *See NAF Holdings, LLC*, 118 A.3d at 180 (concluding a corporation could not bring claims belonging only to its subsidiaries without first proving demand futility).

---

[4] The parties do not address what fiduciary duties are owed by majority shareholders and managers under Oklahoma corporate law. Regardless, Plaintiffs' claims are sufficient to state a claim for breach of fiduciary duties, owed to HMC under Delaware law due to the nature of HMC's relationship to Defendants as the minority member in nine Delaware HMC Hospital LLCs.

### 3. Conversion (Count VI)

Plaintiffs assert that "HMC owned or had the right to the use and possession of its business accounts at US Bank," Doc. 21, ¶ 128, and "owned an interest in the cash assets of the HMC Hospitals," *id.* at ¶ 129, and that Defendants "intentionally interfered with and exercised dominion and control over the accounts and misappropriated the funds of the HMC Hospitals . . . depriv[ing] HMC of its possession or use of the accounts and its ownership interest in the funds," *id.* at ¶ 130.

To state a claim for conversion, a plaintiff must allege that "[it] had the right to possession of the converted property at the time of the alleged conversion." *Kingfisher Hosp., Inc. v. Behmani*, 335 S.W.3d 486, 498 (Mo. Ct. App. 2011) (quotations omitted). Here, Plaintiffs have alleged a right to possess both the "business accounts at US Bank" and "cash assets of the HMC Hospitals." Doc. 21, ¶¶ 128, 129. Money may be subject to conversion when it can be "described or identified as a specific chattel," such as the business accounts at US Bank here. *Asbury Carbons, Inc. v. Sw. Bank, an M & I Bank*, No. 4:10-CV-878 CEJ, 2011 WL 1086067, at *4 (E.D. Mo. Mar. 22, 2011) (citing *Moore Equip. Co. v. Callen Const. Co., Inc.*, 299 S.W.3d 678, 681 (Mo. Ct. App. 2009)). Accepting Plaintiffs' allegations as true, Plaintiffs have standing, and have adequately stated, a claim for conversion.

### 4. Accounting (Count VIII)

Plaintiffs request "an accounting of all financial and monetary transactions involving the HMC Hospitals" since HAC acquired its 80% interest in the HMC Hospitals against all Defendants (Count VIII). Doc. 21, ¶¶ 134–43; *see also* Doc. 21-7 (January 29, 2018 Letter to HAC for Accounting). According to the First-Amended Complaint, the HMC Hospitals are comprised of nine Delaware LLC's and one Oklahoma corporation. Doc. 21, ¶ 2.

As a preliminary matter, Plaintiffs acknowledge that courts applying Oklahoma law have considered an action for accounting to be derivative. Doc. 46, p. 11 ("[I]n Oklahoma a court held that an action for accounting was derivative."). In other words, a claim for accounting for the HMC Hospital incorporated in Oklahoma (CAH Acquisition Company #4, Inc.) is a cause of action belonging to the HMC Hospital, and which can only be asserted by its shareholders derivatively. *See Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968) (concluding accounting action was derivative). Thus, any claim asserted by Plaintiffs here for accounting from the Oklahoma HMC Hospital, is double derivative—Plaintiff shareholders of the parent corporation (HMC) seeking to recover for a cause of action belonging to a subsidiary corporation (the Oklahoma HMC Hospital). Because Plaintiffs are not controlling shareholders of the Oklahoma HMC Hospital, they lack standing to assert this claim as it pertains to the Oklahoma HMC Hospital.

With respect to the Delaware HMC Hospital LLCs, Plaintiffs assert that HMC has a claim for accounting under Delaware law, Del. Code tit. 6, § 18-305. Doc. 46, p. 10.[5] However, Section 18-305 is explicit that any action under section 18-305 must be brought in the Delaware Court of Chancery, which is "vested with exclusive jurisdiction to determine whether or not the person seeking such information is entitled to the information sought." Del. Code tit. 6, § 18-305(f) ("Any action to enforce any right arising under this section shall be brought in the Court of Chancery.").

---

[5] Plaintiffs also assert that their claim for accounting is supported by the Amended Operating Agreements, which grant a right to inspect and copy "all books and records of the Company." Doc. 21-4, p. 9, § 5.2. However, the Agreement is explicitly governed by Delaware law. *Id.* at p. 13, § 8.11 ("This agreement shall be govern [sic] by, and construed in accordance with, the laws of the state of Delaware."). Plaintiffs point to no such corresponding agreement for the HMC Hospital incorporated in Oklahoma. Doc. 46, p. 13 ("Plaintiff's [sic] do not have copies of any bylaws of the Oklahoma corporate hospital entities that presumably were amended (like the amended operating agreements) when HAC took over control and accordingly cannot comment on any duties imposed on management under them.").

Thus, the Court finds that dismissal of Plaintiffs' accounting claim, as it pertains to the Delaware HMC Hospital LLCs, is appropriate in the interest of comity. *See, e.g.*, *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, No. 3:15-CV-22, 2017 WL 4998663, at *19 (W.D. Pa. Oct. 30, 2017) (declining to exercise jurisdiction over action pursuant to § 18-302 based "on principles of comity and non-interference in the fundamental internal affairs of a business entity created under the laws of another state"); *Camacho v. McCallum*, No. 16 CVS 602, 2016 WL 6237825, at *4 (N.C. Super. Oct. 25, 2016) (dismissing accounting/inspection claim under Del. Code tit. 6, § 18-305 and LLC operating agreement for lack of subject matter jurisdiction).

### B. Personal Jurisdiction

Next, Defendants argue that Plaintiffs' First-Amended Complaint must be dismissed because the Court lacks personal jurisdiction over them. However, Plaintiffs argue that Defendants are each subject to general and specific personal jurisdiction related to their actions within the state of Missouri. Doc. 21, ¶ 14 ("[E]ach Defendant is either a legal entity that conducts business in and maintains operations within the State of Missouri and this District . . . or is an entity or individual who has committed acts within the State of Missouri pursuant to Mo. Supreme Court Rule 54.06 out of which these causes of action arise and has sufficient minimum contacts[.]").

A court has general personal jurisdiction over a defendant who has "continuous and systematic" business contacts with the forum state. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). "[I]n such circumstances the alleged injury need not have any connection with the forum state." *Id.* Plaintiffs allege that defendant HAC has done business in Missouri "beginning in December, 2013 when it extended the loan to HMC, through the present based on its ownership of the I-70 hospital," Doc. 34 (Suggestions in Opposition to Motion to Dismiss), p. 12, and has used a Kansas City business address, *id.*; Doc. 21, ¶ 16; Doc. 21-4, p. 13 (listing Kansas City

9

business address for HAC). Additionally, Plaintiffs allege that defendant "Empower H.I.S. has done business [in Missouri and this District] systematically through its continuous provision of back office/billing services to the I-70 hospital since mid-2017," Doc. 34, p. 12; Doc. 21, ¶ 17, and that defendants Nusbaum, White, and Perez have done business in Missouri for many years through "their continued management of the I-70 hospital" and "attendance at HMC board and shareholder meetings," Doc. 34, p. 13; Doc. 21, ¶ 15.

However, even if these alleged business contacts are insufficient to establish general jurisdiction, Plaintiffs have alleged "sufficient minimum contacts" related to the conduct giving rise to this suit to establish specific jurisdiction. For the Court to exercise specific personal jurisdiction over defendants, jurisdiction must be appropriate under both the Missouri long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011). The Missouri long-arm statute provides for personal jurisdiction over "[a]ny person or firm . . . who in person or through an agent . . . commi[ts] a tortious act within this state[.]" Mo. Rev. Stat. § 506.500.1.

Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, the Court turns directly to the question of whether the assertion of personal jurisdiction over Defendants would violate the due process clause. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). To satisfy due process a defendant must have "sufficient minimum contacts" with the forum state so as not to "offend traditional notions of fair play and substantial justice." *Id.* (quotations omitted). Due process is satisfied if the out-of-state defendant "'purposefully directed [its] activities at [Missouri] residents' in a suit that 'arises out of' or 'relates to' these activities." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotations omitted). The Court considers: (1) the "nature and quality" of

Defendants' contacts with Missouri; (2) the "quantity of such contacts"; (3) the "relation of the cause of action to the contacts"; (4) the interest of Missouri in providing a forum for its residents; and (5) the "convenience of the parties[,]" giving "significant weight . . . to the first three factors." *Romak USA, Inc.*, 384 F.3d at 984 (quotations omitted).

Plaintiffs allege that Defendants engaged in a conspiracy to "deprive HMC of its ownership and control of the HMC Hospitals," including one in Missouri, and made affirmative misrepresentations to HMC, a Missouri-based company, while physically present in Missouri. Doc. 21, ¶ 98. Specifically, Plaintiffs allege that defendants Nusbaum, White, and Perez, individually and on behalf of defendants HAC and Empower H.I.S., "attended a meeting of the HMC Board in Kansas City, Missouri on March 6, 2017 . . . at which they made the false representations" alleged in the First-Amended Complaint. *Id.* at ¶¶ 15, 34, 98. These false representations not only form the basis of Plaintiffs' fraudulent misrepresentation and concealment claims (Counts II and III) but were allegedly made in furtherance of Defendants' conspiracy (Count I). *Id.* at ¶ 98. Defendant HAC also exercised an option to convert the loan to an eighty percent equity interest in the HMC Hospitals at the same March 6, 2017 HMC Board meeting in Kansas City, Missouri. *Id.* at ¶ 16. HAC also allegedly entered into the Transition and Conversion Agreements and Amended Operating Agreements, both of which were to be performed at least in part in Missouri, forming the basis of Plaintiffs' breach of contract claim against HAC (Count VII). *Id.* Thus, Plaintiffs have made a prima facie showing that the Court has personal jurisdiction over Defendants.[6]

---

[6] Plaintiffs submit two affidavits in response to Defendants' motion to dismiss in support of their personal jurisdiction argument. Docs. 34-1 (Davis Affidavit) and 34-2 (Morris Affidavit). However, because the Court finds that the allegations made in Plaintiffs' First-Amended Complaint are sufficient, and Defendants do not provide affidavits to counteract Plaintiffs' claims, the Court need not address these additional materials. *See Cantrell v. Extradition Corp. of Am.*,

11

## C. Venue

Defendants also argue that venue is improper, asserting that the case instead belongs in either West Virginia, where there are two prior pending actions "concerning the acquisition of HMC by HAC"—*Rural Community Hospitals of America, LLC v. Rural Hospital Group, LLC, et al.*, No. 18-C-225 and *Health Acquisition Company, LLC v. HMC/CAH Consolidated, Inc.*, No. 17-C-371, or Delaware. Doc. 30, pp. 9–10.

However, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In the Eighth Circuit, the defendant has the burden of establishing that venue is improper. *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 5:18-CV-06037-DGK, 2019 WL 302515, at *4 (W.D. Mo. Jan. 23, 2019) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)). Venue is proper here because a substantial part of the relevant events or omissions alleged in the First-Amended Complaint occurred in this district, including Defendants' alleged misrepresentations to HMC at an HMC Board meeting in Kansas City, Missouri.

Moreover, beyond Defendants' conclusory assertion that the case belongs in West Virginia, Defendants fail to show that the West Virginia actions are in any way similar to this action. In contrast, Plaintiffs assert that neither cited case involves the conspiracy alleged in the First-Amended Complaint nor do they involve the same defendants. Plaintiffs assert that HMC is not a party in the Rural Community Hospitals case, and that the HAC case was settled and dismissed with prejudice over a year ago and did not involve the individual defendants or Empower H.I.S.

---

789 F. Supp. 306, 308 (W.D. Mo. 1992) ("The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.").

Defendants further assert that Missouri is not a proper forum for this derivative action. Defendants argue that the "only proper venue" is Delaware, citing *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 961 (Del. Ch. 2007) ("Representative plaintiffs seeking to wield the cudgel for all stockholders of a Delaware corporation have no legitimate interest in obtaining a ruling from a non-Delaware court."). Doc. 30, p. 11. However, the *Topps* decision was based, among other things, on the "internal affairs" doctrine: matters having to do with the internal regulation of a corporation should be decided by the state of incorporation. *Id.* at 951, 953–54. This case does not involve regulation of the internal affairs of HMC. This is an action by shareholders, the Shaffers, on behalf of a corporation, HMC, seeking to vindicate its rights against third parties for damage to HMC's financial interests. Thus, Defendants have failed to show that venue in this district is improper.

**D. Economic Loss**

Defendants argue that Plaintiffs' claims are barred to the extent that they arise from a breach of contract. Doc. 30, p. 17 ("If the alleged tortious conduct [in the First-Amended Complaint] was governed under any contract, then such conduct is relegated to an action in contract, and the tort claim fails."). The economic loss doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013) (quotations omitted).

However, the doctrine is inapplicable here. Plaintiffs' claims are based on conduct independent from the elements of Plaintiffs' breach of contract claim against HAC. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2017 WL 1498073, at *2 (W.D. Mo. Apr. 26, 2017) ("[I]f the act done independently of the contract would result in a tort, and is not dependent on the elements of the contract claim, a tort claim may be asserted alongside a claim for breach of

13

contract."). Additionally, Defendants do not identify a contract governing Plaintiffs' tort claims, and the case involves fraud, not disappointed commercial expectations. *See RightCHOICE*, 2019 WL 302515, at *10 (finding economic loss doctrine inapplicable to plaintiffs' fraud and conspiracy claims); *MEA Financial Enters., LLC v. Fiserv Sols., Inc.*, No. 3:13-cv-05041-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013) (finding that "the Missouri Supreme Court would not apply the economic loss doctrine to [plaintiff's] tortious interference or fraudulent misrepresentation claims").

### E. Pleading Fraud

Finally, Defendants argue that Plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9.[7] Rule 9(b) requires parties to "state with particularity the circumstances constituting fraud or mistake." This typically includes "the time, place, and contents of the alleged fraud [and] the identity of the person allegedly committing fraud." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997). While conclusory allegations are insufficient, Rule 9(b)'s requirement must be read "in harmony with the principles of notice pleading." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quotations omitted). Thus, "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).

---

[7] Defendants also argue that Plaintiffs' claims lump them together without distinguishing their conduct, in violation of Rule 8(a)'s fair-notice requirement. The Court rejects this argument for the same reasons it rejects Defendants' argument that Plaintiffs failed to plead fraud with particularity as to each Defendant.

Plaintiffs have satisfied this burden. The First-Amended Complaint alleges the role each defendant played in and the contents of the alleged misrepresentations and omissions to the HMC Board as well as when and where those misrepresentations/omissions occurred. Plaintiffs allege that on March 5, 2017, defendant White "acting in concert with and on behalf of the other Defendants" sent an email to representatives of HMC regarding a proposed laboratory testing program for the HMC Hospitals. Doc. 21, ¶ 32. Plaintiffs allege that several false representations were made in that email and that other material facts, included Defendants' intent to operate an illegal billing scheme, were omitted. *Id.* at ¶ 33 (listing alleged false representations). Plaintiffs further allege that, on March 6, 2017, defendants Nusbaum, White, and Perez reiterated to the HMC Board the representations made in the March 5th Email. *Id.* at ¶ 34. Plaintiffs allege that defendants White and Nusbaum acted individually and on behalf of HAC, while defendant Perez's statements were made individually and on behalf of defendant Empower H.I.S. Doc. 34, p. 17; Doc. 21, ¶¶ 10–11 (identifying defendants Nusbaum and White as managers of defendant HAC), 12 (identifying defendant Perez as Chief Executive Officer of defendant Empower H.I.S). This information is sufficient to put Defendants on notice of Plaintiffs' allegations of fraudulent misrepresentation (Count II) and fraudulent concealment (Count III) and to permit them to prepare a response.

### III. Motion for Leave to Amend

Plaintiffs' motion for leave to amend seeks to realign HMC, the corporate defendant on whose behalf this action is brought, as a plaintiff and to add FLEMCo, LLC, "a Missouri [LLC] with its principal place of business in Kansas City, Missouri," as a party plaintiff. Doc. 36-2 (Proposed Second Amended Complaint), ¶ 6. Plaintiffs allege diversity jurisdiction as the sole basis for the Court's subject matter jurisdiction. However, on the face of the proposed Second-

Amended Complaint, the Court cannot determine whether diversity jurisdiction is proper. Plaintiffs' allegation regarding the citizenship of proposed plaintiff FLEMCo, LLC is insufficient because an "LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Thus, the Court defers ruling on Plaintiffs' motion to amend and orders Plaintiffs to show cause, within seven days, why the proposed addition of FLEMCo, LLC as a party plaintiff does not destroy diversity.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss, Doc. 29, is granted in part and denied in part. Plaintiffs' accounting claim (Count VIII) is dismissed.

Plaintiffs are order to show cause, within seven days of the date of this order, why the proposed addition of FLEMCo, LLC as a party plaintiff does not destroy diversity.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  March 5, 2019
Jefferson City, Missouri