**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **JAMES and PHYLLIS SHAFFER,** ) | |
| ) | |
| **FLEMCo, LLC, a Missouri limited liability** ) | |
| **Company,** ) | |
| **2405 NE 78th St.,** ) | |
| **Kansas City, Mo. 64118** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **HMC/CAH CONSOLIDATED, INC.** ) | |
| **A Delaware** corporation, ) | |
| ) | |
| **Nominal Plaintiff** ) | **Case No. 4:18-cv-00601-NKL** |
| ) | |
| **v.** ) | |
| ) | **SHAREHOLDER DERIVATIVE** |
| ) | **COMPLAINT** |
| **HEALTH ACQUISITION COMPANY LLC,** ) | |
| **A West Virginia limited liability company,** ) | |
| ) | |
| ) | **(Jury Trial Demanded)** |
| **EMPOWER H.I.S., LLC,** ) | |
| **A Florida limited liability company** ) | |
| ) | |
| ) | |
| **PAUL L. NUSBAUM,** ) | |
| ) | |
| **STEVEN F. WHITE,** ) | |
| ) | |
| **JORGE A. PEREZ,** ) | |
| ) | |
| **Defendants** ) | |
| ) | |

## <u>SECOND AMENDED COMPLAINT</u>

### INTRODUCTION

Plaintiffs James and Phyllis Shaffer and FLEMCo,LLC ("FLEMCo") submit this Second Amended Shareholder Derivative Complaint (the "Complaint") with leave of Court on behalf of Nominal Plaintiff HMC/CAH Consolidated, Inc. ("Nominal Plaintiff" or "HMC") and against the individuals and entities named herein (collectively, "Defendants").

Plaintiffs allege the following based upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, *inter alia*: (a) a review of the minute books and other business records of HMC; (b) a review of press releases and media reports issued and disseminated by Defendants; (c) a review of other publicly available information concerning HMC and Defendants, including articles in the news media; (d) complaints and related materials in litigation commenced against some or all of Defendants; and (e) a review of the investigative audit conducted by the Office of the Missouri State Auditor (the "State Auditor") of the "billing scheme" engaged in by some of Defendants at Putnam County Memorial Hospital, Unionville, Missouri ("Putnam County Hospital").

## NATURE OF THE ACTION

1.     This is a shareholders' derivative action brought for the benefit of Nominal Plaintiff.

2.     Until March 29, 2017, HMC was the owner of 100% of the member and shareholder interests in the following acute care rural community hospitals (collectively, the "HMC Hospitals"): CAH Acquisition Company #1, LLC, a Delaware limited liability currently doing business as *Washington County Hospital* in Plymouth, North Carolina ("CAH 1"); CAH Acquisition Company #2, LLC, a Delaware limited liability company currently doing business as *Oswego Community Hospital* in Oswego, Kansas ("CAH 2"); CAH Acquisition Company #3,

LLC, a Delaware limited liability company currently doing business as *Horton Community Hospital* in Horton, Kansas ("CAH 3"); CAH Acquisition Company #4, Inc., an Oklahoma corporation currently doing business as *Drumright Regional Medical Center* in Drumright, Oklahoma ("CAH 4"); CAH Acquisition Company #5, LLC, a Delaware limited liability company currently doing business as *Hillsboro Community Hospital* in Hillsboro, Kansas ("CAH 5"); CAH Acquisition Company #6, LLC, a Delaware limited liability company currently doing business as *I-70 Community Hospital* in Sweet Springs, Missouri ("CAH 6"); CAH Acquisition Company #7, LLC, a Delaware limited liability company currently doing business as *Prague Community Hospital* in Prague, Oklahoma ("CAH 7"); CAH Acquisition Company #11, LLC, a Delaware limited liability company currently doing business as *Lauderdale Community Hospital* in Ripley, Tennessee ("CAH 11"); CAH Acquisition Company #12, LLC, a Delaware limited liability company currently doing business as *Fairfax Community Hospital* in Fairfax, Oklahoma ("CAH 12"); and CAH Acquisition Company #16, LLC, a Delaware limited liability company currently doing business as *Haskell County Community Hospital* in Stigler, Oklahoma ("CAH 16").

3. Defendants, through Defendant Health Acquisition Company LLC, acquired a controlling ownership interest in the HMC Hospitals and took over the business and financial affairs of the HMC Hospitals on March 29, 2017. This action seeks to remedy Defendants' fraudulent acts, breaches of fiduciary duty and other illegal acts during the period beginning on or about March 5, 2017 and continuing through the present.

4. HMC has certain claims against each of Defendants as herein alleged. Plaintiffs made demand on HMC to pursue its claims against Defendants. By and through its duly constituted Board of Directors (the HMC Board"), HMC declined to do so. Accordingly, Plaintiffs are

bringing this action derivatively on behalf of HMC. A copy of HMC's response to Plaintiffs' demand is attached hereto and incorporated herein as Exhibit A.

**PARTIES**

5.      Plaintiffs James and Phyllis Shaffer are individuals and citizens of Kansas.

6.      Plaintiff FLEMCo is a Missouri limited liability company which has two members, Mr. Trent Skaggs and Mr. Chris Hoke.  Both individuals reside in and are citizens of the State of Missouri, residing at 5800 N. Grand Ave., Gladstone, Missouri 64118 and 600 S. Woodland Dr., Kansas City, Missouri 64118, respectively.

7.      All Plaintiffs are shareholders of HMC and were shareholders of HMC at the time of the events herein alleged.

8.      Nominal Plaintiff is a Delaware corporation with its principal place of business in Kansas City, Missouri.

9.      Health Acquisition Company LLC ("Defendant HAC") is a West Virginia limited liability company with its principal office in West Virginia. On March 29, 2017, Defendant HAC acquired from HMC an 80% ownership interest in each of the HMC Hospitals. On information and belief, the current members of Defendant HAC are: Steve F. White, Catherine White, Paul L. Nusbaum and Harriet Nusbaum, all of whom are West Virginia citizens; and Jorge A. Perez, Ricardo J. Perez and Carlos Perez, all of whom are Florida citizens.

10.     EMPOWER H.I.S. LLC ("Defendant EMPOWER HIS") is a Florida limited liability company with its principal place of business in Florida. On information and belief, the members of Defendant EMPOWER HIS are Jorge A. Perez, Ricardo J. Perez and Carlos Perez, all of whom are citizens of Florida. On information and belief, Defendant EMPOWER HIS was contracted to provide billing and other services to Defendant HAC and the HMC Hospitals as herein alleged.

4

11.     Paul L. Nusbaum ("Defendant Nusbaum") is an individual and citizen of West Virginia. On information and belief, Defendant Nusbaum is a manager of Defendant HAC and is a Managing Director of each of the HMC Hospitals.

12.     Steven F. White ("Defendant White") is an individual and citizen of West Virginia. On information and belief, Defendant White is a Manager of Defendant HAC and is a Managing Director of each of the HMC Hospitals.

13.     Jorge A. Perez ("Defendant Perez") is an individual and citizen of Florida. On information and belief, Defendant Perez is the Chief Executive Officer of Defendant EMPOWER H.I.S. and is a manager of Defendant HAC and is a Managing Director of each of the HMC Hospitals.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over each Defendant because each Defendant is either a legal entity that conducts business in and maintains operations within the State of Missouri and this District, and thus is subject to the general jurisdiction of this Court, or is an entity or individual who has committed acts within the State of Missouri pursuant to Mo. Supreme Court Rule 54.06 out of which these causes of action arise and has sufficient minimum contacts with this State so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16.     Specifically, the individual Defendants attended a meeting of the HMC Board in Kansas City, Missouri on March 6, 2017 (the "March 6th HMC Board Meeting") at which they

made the false representations detailed herein and at which they asserted control over the HMC Hospitals. Thereafter, the individual Defendants caused or aided and abetted the illegal billing scheme to be perpetuated at CAH #6 located in this State and District and at least the individual Defendant Jorge Perez has been present in Missouri after March 6, 2017 to carry out the billing scheme herein described. Accordingly, said Defendants have transacted business, entered into contracts and committed tortious acts within the State of Missouri out of which these causes of action arose.

17.     Defendant HAC has transacted business, committed tortious acts, owns, uses and possesses real estate, and entered into contracts within this State by virtue of having extended a 6.0 million dollar loan to HMC in December, 2013 and later exercising in Kansas City, Missouri (on March 6, 2017) an option to convert the loan to an 80% equity interest in the HMC Hospitals, entering into the Transition and Conversion Agreements herein described and to be performed at least in part in this State, and, through its agents Nusbaum, White and Perez, making the false representations to the HMC Board as herein described and using and possessing the real estate consisting of CAH #6 located in Missouri as set out in paragraph 2 above.

18.     Defendant Empower H.I.S. has transacted business and entered into contracts within this State by virtue of providing financial and management services to CAH #6 and to an affiliate, Empower HMS, which has an office in Kansas City, Missouri at 1700 Swift Avenue, Ste. 200, North Kansas City, Missouri 64116.

19.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and Western District Civil Rule 3.2 (b) because a substantial portion of the transactions and wrongs complained of herein, including Defendants' participation in the wrongful acts herein alleged and aiding in the commission of the fraud and/or the violation of fiduciary duties owed to HMC, occurred in this

6

District and in this Division and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

20.     This action is not collusive in order to confer jurisdiction on this Court which it would otherwise lack.

21.     Plaintiffs will fairly and adequately represent the interests of shareholders who are similarly situated in enforcing the rights of the corporation.

## CERTAIN EVENTS AND AGREEMENTS

22.     On March 29, 2017, Defendant HAC acquired, and it currently owns, a majority 80% member/shareholder interest in the HMC Hospitals. HMC currently owns a minority 20% of the member/shareholder interests in the HMC Hospitals.

23.     In December 2013, Defendants Nusbaum and White formed Defendant HAC as a special purpose entity to make a loan of $6 million to HMC. HMC secured the loan by pledging its member/shareholder interests in the HMC Hospitals to Defendant HAC. The loan documents included an option provision whereby Defendant HAC could acquire 80% of HMC's member/shareholder interests in the HMC Hospitals in exchange for the cancellation of the indebtedness.

24.     On March 29, 2017, Defendants fraudulently caused and induced HMC to execute that certain Conversion to Equity Agreement (the "Conversion Agreement") whereby HMC sold 80% of its ownership interests in the HMC Hospitals to Defendant HAC in exchange for the cancellation of the $6 million indebtedness.  A copy of the Conversion Agreement is attached hereto and incorporated herein as Exhibit B.

25.     On information and belief, Defendants Nusbaum and White sold 50% of the member interests in Defendant HAC to Defendant Perez, and to Ricardo Perez and Carlos Perez,

for a purchase price of $6 million. The operating agreement of Defendant HAC was thereafter amended, *inter alia*, to reflect the change in ownership interests and to designate Defendants Nusbaum and Perez as the managers of Defendant HAC.

26.     On May 9, 2017, HMC, the HMC Hospitals, Defendant HAC and certain other parties, executed that certain Agreement (the "Transition Agreement") whereby, *inter alia*, Defendants fraudulently caused and induced HMC to cooperate and work with Defendant HAC and the other Defendants "in good faith to implement new operating agreements and governing documents" for the HMC Hospitals" and to ensure "a smooth and orderly transition of the operations of the [HMC] Hospitals" to Defendant HAC. A copy of the Transition Agreement is attached hereto and incorporated herein as Exhibit C.

27.     On information and belief, following the execution of the Transition Agreement, Defendant HAC contracted Defendant EMPOWER H.I.S. to take over billing and revenue functions for the HMC Hospitals and contracted another affiliate of Defendant Perez, EMPOWER H.M.S., to take over management of the HMC Hospitals.

28.     In June 2017, Defendants fraudulently caused and induced HMC to execute certain "Second Amended and Restated Limited Liability Company Agreements" for each of the HMC Hospitals (collectively, the "Amended Operating Agreements") except CAH #4, which is an Oklahoma corporation. A copy of one of the Amended Operating Agreements, which are substantively the same, is attached hereto and incorporated herein as Exhibit D.

## FORMATION OF CIVIL CONSPIRACY

29.     On information and belief, on or prior to March 6, 2017, Defendants secretly agreed, *inter alia*, that Defendant HAC would exercise its option to acquire 80% of the member/shareholder interests in the HMC Hospitals for the purpose of using the HMC Hospitals

as instrumentalities in the operation of an illegal billing scheme, and of committing the other wrongful acts herein alleged. Such agreement constitutes a civil conspiracy in that Defendants agreed to do (and did do) unlawful acts or lawful acts in an unlawful way as herein alleged, and the actions taken by Defendants in furtherance of their agreement resulted in injury to HMC, and to the HMC Hospitals.

30.    In furtherance of the civil conspiracy as herein alleged, Defendants, *inter alia*, used fraudulent inducements, made fraudulent misrepresentations and concealed material facts for the purpose of causing and inducing HMC to execute the Conversion Agreement, the Transition Agreement and the Amended Operating Agreements, and to otherwise cooperate with their takeover of the business and financial affairs of the HMC Hospitals.

31.    In furtherance of the civil conspiracy as herein alleged, Defendants violated their fiduciary duties to HMC and the HMC Hospitals by, *inter alia*, using the HMC Hospitals as instrumentalities in an illegal billing scheme, filing false cost reports, delegating to Defendant Perez absolute authority to act on behalf of the HMC Hospitals, converting the banks accounts of HMC to their own use, misappropriating the funds of the HMC Hospitals to their own use, and violating, or causing the HMC Hospitals to violate, loan covenants to bank lenders.

32.    Defendants aided and abetted and rendered substantial assistance to each other in the commission of the illegal acts herein alleged. In so doing, each Defendant acted with knowledge of the wrongdoing and was aware of his or its overall contribution to and furtherance of the civil conspiracy.

## FRAUDULENT ACTS AND OMISSIONS

33.    In anticipation of a special meeting of the HMC Board of Directors, the March 6th HMC Board Meeting, Defendant White, acting in concert with and on behalf of the other

9

Defendants, sent on March 5, 2017 an email to representatives of HMC (the "March 5th Email"). The purpose of the March 5th Email was to respond to HMC's prior request for due diligence information concerning Defendant Perez and certain of his affiliates, and to propose to the HMC Board a laboratory testing program for the HMC Hospitals. A copy of the March 5th Email is attached hereto and incorporated herein as Exhibit E.

34.     In the March 5th Email, Defendants represented to HMC, *inter alia*, that:

a.      The proposed laboratory testing program was compliant with all applicable federal and state legal requirements, and with the requirements of the third-party payers with which the HMC Hospitals contracted (the "Insurance Companies").

b.      The contract managers of the HMC Hospitals had reviewed the laboratory testing program and would opine to HMC that the program was compliant with all applicable federal and state legal requirements, and with the contractual requirements of the Insurance Companies.

c.      All specimens sent to the HMC Hospitals for testing will be primarily from individuals who reside in the states where the HMC Hospital that is to test the specimen is located.

d.      All testing of specimens will be performed onsite at the laboratory maintained by the HMC Hospital that is to test the specimen in order to assure that the program was 100% compliant with all applicable federal, state and third-party payer requirements.

35.     Defendants Nusbaum, White, and Perez attended the March 6th HMC Board Meeting. During their presentation, they reiterated to the HMC Board, *inter alia*, the

10

representations concerning the proposed testing laboratory program contained in the March 5th Email.

36. The HMC Board voted to take the proposed laboratory testing program under advisement for further due diligence. Immediately thereafter while the meeting was still in progress, Defendants Nusbaum and White gave written notice to the HMC Board that Defendant HAC was exercising its option to acquire 80% of the member/shareholder interests in the HMC Hospitals.

37. At all times relevant to this Complaint, Defendants concealed or suppressed from HMC and the HMC Board the fact that their true intent was to use the HMC Hospitals as instrumentalities in the operation of the illegal billing scheme hereinafter alleged.

### THE SCHEME AT PUTNAM COUNTY HOSPITAL

38. The illegal billing scheme that Defendants intended to implement at the HMC Hospitals and did implement in at least some of them, was substantially similar to the scheme then being operated by Defendant Perez and Defendant EMPOWER H.I.S. and their affiliates at Putnam County Hospital, a 15-bed rural hospital located in Unionville, MO.

39. Defendants concealed or suppressed from HMC and the HMC Board the fact that their true intent was to implement the same illegal billing scheme at the HMC Hospitals.

40. On information and belief, in late 2016, Defendant Perez and Defendant EMPOWER H.I.S. and their affiliates put in place the illegal billing scheme at Putnam County Hospital. In the first six months of 2017, the volume of laboratory testing billed through Putnam County Hospital grew to more than 37,000 claims, or an increase over the hospital's previous laboratory billing of more than 43,000%.

41. The illegal billing scheme at Putnam County Hospital has been investigated by the State Auditor. The State Auditor described the billing practices at Putnam County as a "billing

scheme" where the vast majority of billings were for persons who never had been to or received medical services from Putnam County. The State Auditor noted that Putnam County "submits the bills for services [of the unrelated third-party labs that actually performed the tests, hereinafter the "Pass-Through Labs"] to the insurance companies, funneling millions of dollars through the hospital and reducing it to what is essentially a shell organization for labs across the country."

42.     The illegal billing scheme at Putnam County Hospital is currently the subject of pending litigation in the St, Joseph Division of this Court, as Case No. 5:18-cv-06037-DGK and captioned *RightChoice Managed Care, Inc. et al v. Hospital Partners, Inc. et al.*  As alleged in that action, through the fraudulent billing scheme the defendants billed the insurers at rates higher than would have been allowed if the true identity of the laboratory performing the test had been disclosed and in many cases the claims would not have been eligible for payment at all.

## THE SCHEME AT THE HMC HOSPITALS

43.     Defendants have used all or some of the HMC Hospitals as instrumentalities in an illegal billing scheme as a means to enrich themselves at the expense of the Insurance Companies by billing for laboratory services that were not payable under, or otherwise in violation of, their payer contracts with the HMC Hospitals.

44.     The Insurance Companies billed under the illegal billing scheme have included, *inter alia*, United Health Care, AETNA, CIGNA, Connecticut General Life Insurance Company, Humana, Pan American Life Insurance Company, BCBS, HEALTHSCOPE, Benefit Management, and UMR W. H. BRAUM.

45.     On information and belief, Defendants Nusbaum, White and Perez, acting in their capacities as the Managing Directors of the HMC Hospitals, entered into a series of agreements with Defendant EMPOWER H.I.S. and other affiliates of Defendant Perez, which allowed them, and the various laboratories with which they contracted (collectively, the <u>Pass-Through Labs</u>"), to

12

use the HMC Hospitals as pass-through billing entities for testing performed by the Pass-Through Labs, in that the individuals who had their specimens tested by the Pass-Through Labs (a) had never been present at the HMC Hospitals, (b) had never been seen by a credentialed healthcare provider of the HMC Hospitals, and (c) resided in states other than those where the HMC Hospitals are located.

46.　　On information and belief, under the series of agreements with the Pass-Through Labs, Defendants submitted, or caused to be submitted to, the Insurance Companies claims under the names of one or more of the HMC Hospitals and used their National Provider Identifier (NPI), tax identifier and other billing information. All such claims were charged at the favorable reimbursement rates given to the HMC Hospitals as participating hospitals in the Insurance Companies' network of providers.

47.　　The claims submitted to the Insurance Companies for reimbursement include, *inter alia*, urine drug, blood and a variety of other laboratory tests.

48.　　Had Defendants and/or the Pass-Through Labs billed the claims directly to the Insurance Companies most of the claims would not have been paid by the Insurance Companies, and those that were paid would have been paid at substantially lower rates.

49.　　On information and belief, substantially all the individuals whose specimens were tested by the Pass-Through Labs resided in states outside those where the HMC Hospitals are located, and such individuals only connection to the HMC Hospitals was that their tests were passed through the HMC Hospitals for billing and payment, were never performed at the\ HMC Hospitals.

50.　　Defendants misrepresented and took active steps to conceal and suppress from HMC and the Insurance Companies the identity of the individuals whose specimens were tested

by the Pass-Through Labs, and that the fact that their specimens were never tested at the HMC Hospitals and were not billed or collected by the HMC Hospitals. Such steps included, *inter alia*, not providing any medical records or other information when requested by the Insurance Companies, and by not appealing or otherwise attempting to collect payment on any claim denied payment regardless of the reason.

51.     Defendants engaged in such deceptions in order to take advantage of the HMC Hospitals' participating status and favorable reimbursement rates with the Insurance Companies. Defendants knew that the Insurance Companies were more likely to be deceived into paying for tests that appeared to be performed at participating HMC Hospitals rather than non-participating Pass-Through Labs. Defendants knew the HMC Hospitals' contracts with the Insurance Companies entitled them to substantially higher reimbursement rates than the Pass-Through Labs would receive if they billed the tests directly.

## Details of the Scheme

52.     Defendants took over the HMC Hospitals in March 2017 in order to use them to camouflage the true source of the laboratory claims so that the Insurance Companies would be deceived into paying claims at rates substantially higher than the Pass-Through Labs could bill directly.

53.     To increase the revenues that they could generate from the illegal billing scheme, Defendants relied upon a network of referring healthcare providers, including pain clinics and drug detoxication facilities, who order large volumes of laboratory testing. Upon information and belief, Defendants pay the referring providers a portion of reimbursements they receive from the Insurance Companies as a kickback to ensure the continuous flow of specimens.

14

54.     Once a test is ordered by a referring provider, one of the Pass-Through Labs performs the test and then sends the test results to Defendant EMPOWERHIS for billing. Upon receipt, Defendant EMPOWERHIS prepares the billing statement to make it appear to the Insurance Company as if the test was performed by one of the HMC Hospitals. On information and belief, the purpose of this deception is to trick the Insurance Company into believing that the higher reimbursement rate of the HMC Hospitals is applicable. After this "pass-through" billing process is completed, Defendant EMPOWERHIS submits the claim for payment.

55.     Claims that are prepared for payment in this fashion contain material misrepresentations or omissions, all of which are intended to deceive the Insurance Companies into paying bogus claims at higher rates by concealing the fact that the test was performed by a Pass-Through Labs and not by one of the HMC Hospitals.

56.     On information and belief, Defendants appropriated for their own use a substantial percentage of the revenue derived from this billing scheme.

## BREACHES OF FIDUCIARY DUTY

57.     The Amended Operating Agreements provide that each of the HMC Hospitals shall be controlled and managed by three Managing Directors, who are authorized to do or cause to be done all "lawful things" on behalf of the HMC Hospitals.  Ex. D, section 4.1(a).

58.      The Amended Operating Agreements provide, in relevant part, that:

Each Managing Director shall exercise their responsibility and duties to the Company, with the highest level of fiduciary duty of care and loyalty to the Company in a prudent business manner and will take all actions and make all votes in good faith consistent with such duties. Each Managing Director must discharge his duties in good faith, and in a manner that the Managing Director reasonably believes to be in the best interests of the Company.  Ex. D, section 4.1(b).

15

59.     On information and belief, Defendants Nusbaum, White and Perez were thereafter designated as, and are currently acting as, the Managing Directors for each of the HMC Hospitals, and accordingly under the Amended Operating Agreements owed the highest level of fiduciary duty to the hospitals and the limited liability companies that own them, including its minority member, HMC.

60.     By reason of its 80% majority ownership interest in the HMC Hospitals, Defendant HAC is in a fiduciary relationship with HMC and owes to HMC a duty of highest care and loyalty, fair dealing and full, candid and adequate disclosure, as well as a duty to protect the value of HMC's minority 20% ownership interest in the HMC Hospitals, all according to the Delaware law that governs the Amended Operating Agreements of the HMC Hospitals.

61.     Defendants Nusbaum, White and Perez, and Defendant HAC, have consistently and repeatedly failed to exercise their responsibility and duties to the HMC Hospitals and companies and to HMC, with the highest level of fiduciary duty of care and loyalty as herein alleged.

**Involvement in Illegal Billing Scheme**

62.     Defendants Nusbaum, White and Perez, and Defendant HAC, have breached the Amended Operating Agreements and violated their fiduciary responsibility and duties to the HMC Hospitals and HMC by involving the HMC Hospitals in the illegal billing scheme and using the HMC Hospitals as instrumentalities to operate the illegal billing scheme as herein alleged.

**Filing of Misrepresented and False Cost Reports and Overcharging for Services from Related Organizations**

63.     Defendants Nusbaum, White and Perez, and Defendant HAC, have breached the Amended Operating Agreements and violated their fiduciary duties to the HMC Hospitals and

HMC by filing, or causing the HMC Hospitals to file, misrepresented and false cost reports with The Centers for Medicare and Medicaid Services ("CMS").

64. All of the HMC Hospitals are designated as Critical Access Hospitals by CMS. Critical Access Hospitals are rural hospitals that maintain no more than 25 inpatient beds and comply with the other applicable regulatory requirements.

65. Critical Access Hospitals receive cost-based reimbursement from CMS for Medicare services and from some (but not all) States for Medicaid services. Critical Access Hospitals are paid for most inpatient and outpatient services to Medicare patients at 101% of reasonable costs.

66. Critical Access Hospitals are required to submit annual cost reports to CMS containing, *inter alia*, provider information such as facility characteristics, utilization data, costs and charges by cost center (in total and for Medicare), Medicare settlement data, and financial statement data.

67. Cost reports contain certifications to safe guard CMS against mistaken and fraudulent requests for reimbursement. As a preface to the cost report certification, the following warning appears:

> MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. FURTHMORE, IF SERVICES IDENTIFIED IN THIS REPORT WERE PROVIDED OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WERE OTHERWISE ILLEGAL, CRIMINAL OR ADMINISTRATIVE ACTION, FINES AND/OR MPRISONMENT MAY RESULT.

This warning is followed by the certification language itself:

> CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)

I HEREBY CERTIFY that I have read the above statement and that I have examined the accompanying electronically filed or manually submitted cost report And the Balance Sheet and Statement of Revenue and Expenses prepared by [name of facility, ID number of facility] for the cost reporting period beginning [date] and that to the best of my knowledge and belief, it is true, correct and complete statement prepared from the books and records of the provider *in accordance with applicable instructions,* except as noted. I further certify that I am familiar with *the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.* [emphasis added]

68.     On information and belief, a material portion of the laboratory services identified in the filed cost reports for the HMC Hospitals were provided or procured by Defendants through the illegal billing scheme and through the payment directly or indirectly of kickbacks. Thus, the cost reports contained false information as to the cost of such laboratory testing and the certifications thereof were false.

69.     In material part, 42 CFR 413.17(a) provides that "costs applicable to services and supplies furnished to the providers *by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization*." [emphasis added]

70.     In accordance with applicable instructions contained in the CMS Provider Reimbursement Manual, the Medicare provider must disclose in its cost report all related organizations and all transactions with related organizations and must reduce the costs attributable to all transactions with related organizations to the cost of the related organizations.

71.     On information and belief, the filed cost reports of the HMC Hospitals contain misrepresentations or falsifications in that they do not (a) disclose all related organizations or all transactions with related organizations which have furnished the HMC Hospitals with services and supplies and/or (b) reduce the costs attributable to all transactions with related organizations to the cost of those organizations.

18

72. On information and belief, the related organizations that have furnished services or supplies to HMC Hospitals include, *inter alia*, Defendant EMPOWER H.I.S., The National Alliance of Rural Hospitals, HIPAA Guard, Reboot, and Regional Lab Outreach (RLO). These organizations are controlled by one or more of the Defendants, including Defendant Perez.

73. In addition to misreporting the cost of services from the related organizations, Defendants caused them to bill the HMC Hospitals excessive and unreasonable charges for the services.

74. On information and belief, the filing of misrepresented and false cost reports on behalf of the HMC Hospitals and making excessive and unreasonable charges for services was in furtherance of the conspiracy and an integral step in Defendants' use of the HMC Hospitals as instrumentalities to implement the illegal billing scheme and to commit other illegal acts herein alleged.

### Delegation of Full Authority to Defendant Perez

75. Defendants Nusbaum, White and Perez, and Defendant HAC, have breached the Amended Operating Agreements and violated their fiduciary duties to the HMC Hospitals and HMC by delegating to Defendant Perez the sole and absolute authority to act on behalf of the HMC Hospitals.

76. On or about August 3, 2017, a meeting of the "governing members" of the HMC Hospitals was convened (the "August 3rd Meeting"). A copy of the minutes of the August 3rd Meeting are attached hereto and incorporated herein as Exhibit F.

77. HMC was not given any notice of the August 3rd Meeting, was unaware that August 3rd Meeting had been held by Defendants and was not attended by any representative of HMC.

19

78.     The purpose of the August 3rd Meeting was, *inter alia*, to discuss all matters or relationships that the HMC Hospitals have or may have with "financial entities" including "all checking accounts involving deposits" by each of the HMC Hospitals and "payroll/operational expense accounts."

79.     By the unanimous vote, Defendant Perez was given the sole discretion to act on behalf of the HMC Hospitals on "all matters relating to bank accounts and lending matters including relationship with all banks and governmental entities." This delegation of authority included the signing legal documents and checks, and "the authority to add individuals for purposes of signing checks on any and all accounts for all entities."

80.     On information and belief, the August 3rd Meeting was in furtherance of the conspiracy and an integral step in Defendants' use of the HMC Hospitals as instrumentalities to implement the illegal billing scheme and to commit other illegal acts herein alleged.

### Conversion of HMC Accounts

81.     Defendants Nusbaum, White and Perez, and Defendant HAC, have breached the Amended Operating Agreements and violated their fiduciary duties to HMC by their conversion and unauthorized use of HMC's business accounts at US Bank.

82.     At all times relevant to this Complaint, HMC has owned and maintained, and currently owns and maintains, business accounts at US Bank.

83.     Defendants converted HMC's accounts to their own use, and are currently using, HMC's accounts to receive and transfer the funds generated by Defendants' use of the HMC Hospitals as instrumentalities for the illegal billing scheme and by the other illegal acts herein alleged.

84.     The use of HMC's accounts by Defendants was not authorized by HMC and was done without its knowledge or consent. On information and belief, the purpose of Defendant's use of HMC's accounts is to conceal the origin of the funds obtained through the illegal billing scheme operated at and through the HMC Hospitals.

85.     On information and belief, the conversion and unauthorized use of HMC's business accounts was in furtherance of the conspiracy and an integral step in Defendants' use of the HMC Hospitals as instrumentalities to implement the illegal billing scheme and to commit the other illegal acts herein alleged.

### Misappropriation of Funds

86.     Defendants Nusbaum, White and Perez, and Defendant HAC, have violated their fiduciary duties to the HMC Hospital and HMC by their misappropriation of funds in the amount of $2,000,000 or more belonging to the HMC Hospitals.

87.     On information and belief, Defendant White and Defendant Perez, and Defendant HAC first transferred the misappropriated funds from the accounts of the HMC Hospitals into the business accounts of HMC at US Bank, and then transferred such funds to their own domestic and foreign accounts and/or the accounts of other hospitals which Defendant Perez and his affiliates own or manage.

88.     On information and belief, the misappropriation of cash funds belonging to the HMC Hospitals was in furtherance of the conspiracy and an integral step in Defendants' use of the HMC Hospitals as instrumentalities to implement the illegal billing scheme and to commit the other illegal acts herein alleged.

### Bank Loans - Breach of Affirmative Covenants

89.     Defendants Nusbaum, White and Perez, and Defendant HAC, have breached the Amended Operating Agreements and violated their fiduciary duties to the HMC Hospitals and HMC by causing the HMC Hospitals (as borrowers) and HMC (as guarantor) to breach certain affirmative covenants and guaranties given to banks in connections with secured loans (collectively the "Bank Loans").

90.     CAH 4 and CAH 6 have Bank Loans with First Liberty Bank (Oklahoma City OK). These Bank Loans are guaranteed by the United States Department of Agriculture ("USDA") and have an aggregate principal balance of approximately $17 million. CAH 5 has a Bank Loan with the Bank of Hays (Hays KS). This Bank Loan is guaranteed by the USDA and has a principal balance of approximately $9.9 million. CAH 16 has an outstanding loan with Stone Bank (Little Rock AK). This Bank Loan is not guaranteed by the USDA and has principal balance of approximately $2.4 million.

91.     HMC guaranteed the performance of CAH 4, CAH 5, CAH 6 and CAH 16 under each of the Bank Loans.

92.     The loan documents for the Bank Loans have, *inter alia*, affirmative covenants that require the borrowers to provide interim unaudited financial statements and annual audited financial statements, and to file Federal and state tax returns. The failure to provide such financial statements or to file such tax returns on a timely basis is an event of default under each of the Bank Loans.

93.     In the Transition Agreement, Defendant HAC agreed to prepare the financial audit of the HMC Hospitals for FY 2016 and any later fiscal year.

94.     On information and belief, Defendants Nusbaum, White and Perez, and Defendant HAC, have not caused CAH 4, CAH 5, CAH 6 and CAH 16 to provide interim or audited financial

statements to the banks, or to file tax returns. As a result of such failure, CAH 4, CAH 5, CAH 6 and CAH 16, are now in default of the Bank Loans, and HMC is in default of its guaranties.

**Bank Loans - Breach of "Due-on-Sale" Clauses**

95.     Four of the Bank Loans contain "due‑on‑sale" clauses that stipulate, *inter alia*, that the full principal balance may be called due (repaid in full) upon a sale or transfer of a controlling interest in CAH 4, CAH 5 and CAH 16. If such a sale or transfer occurs without the consent of the banks, each bank has the right to call its Bank Loan due and payable in full.

96.     The sale and transfer of 80% of HMC's ownership interests in CAH 4, CAH 5 and CAH 16 pursuant to the Conversion Agreement required the consent of the banks. On information and belief, Defendants Nusbaum, White and Perez, and Defendant HAC, have not requested or obtained the consent of the banks to such sale and transfer. As a result of such failure, CAH 4, CAH 5 and CAH 16 are in default of the "due-on-sale" clauses in the Bank Loans.

97.     On information and belief, the failure to comply with the loan covenants was a breach of the Amended Operating Agreements and Defendants' fiduciary duties and was in furtherance of the conspiracy and an integral step in Defendants' use of the HMC Hospitals as instrumentalities to implement the illegal billing scheme and to commit the other wrongful acts herein alleged.

**FIRST CAUSE OF ACTION**
**(Civil Conspiracy against all Defendants)**

98.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

99.     Defendants conspired and agreed with each other and formed a meeting of the minds to (1) deprive HMC of its ownership and control of the HMC Hospitals through, *inter alia*,

23

the unlawful false representations described above and (2) to use the HMC Hospitals as instrumentalities in the illegal billing scheme and other wrongful acts herein alleged.

100.     In furtherance of the conspiracy, Defendants made false and misleading statements and took unlawful acts to replace HMC as owner of the HMC Hospitals by fraudulently inducing HMC to execute the Conversion Agreement, the Transition Agreement and the Amended Operating Agreements, and to induce HMC to otherwise cooperate with Defendants' takeover of the HMC Hospitals as herein alleged.

101.     In furtherance of the conspiracy, Defendants in fact utilized the HMC Hospitals as instrumentalities in the illegal billing scheme and other wrongful acts herein alleged.

102.     Defendants' actions were intended to advance their own financial and business interests and were motivated by their desire to obtain control of the HMC Hospitals for the purpose of using them as instrumentalities in the illegal billing scheme and to take the other wrongful acts herein alleged.

103.     Defendants' actions were without justification and malicious and were done for reasons not reasonably related to the protection or pursuit of a legitimate business interest.

104.     HMC has been damaged by the conspiracy herein alleged as a result of, *inter alia*, the decrease in the value of its ownership interest in the HMC Hospitals.  Whereas, upon information and belief, the value of HMC's 20% interest in the HMC Hospitals had an indicated value of 3.0 million dollars as of March 29, 2017, it has been rendered essentially valueless today by Defendants actions.  In addition, HMC has sustained damage to its business reputation and has been sued by a third party as a result of Defendants actions and mismanagement as herein alleged.

105.     As a result of Defendants' actions as co-conspirators, HMC has suffered actual damages in an amount in excess of $75,000 to be proved at trial.

24

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgment interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### (Fraudulent Misrepresentation against all Defendants)

106.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

107.     The representations contained in the March 5th Email and as reiterated by Defendants during the March 6th HMC Board Meeting were material and were false.

108.     Defendants knew the representations were false or made the representations without knowledge of their truth.

109.     The misrepresentations were made with the intention that HMC rely on them, and HMC did reasonably rely on the representations by, *inter alia*, executing the Conversion Agreement, the Transition Agreement and the Amended Operating Agreements.

110.     HMC suffered damages as a result of relying on the false representations in an amount in excess of $75,000.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgment interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment against all Defendants)

111.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

Case 4:18-cv-00601-NKL   Document 57   Filed 03/14/19   Page 25 of 30

112. Defendants concealed or suppressed material facts from HMC including, *inter alia*, Defendants' intent to use the HMC Hospitals as instrumentalities in the operation of an illegal billing scheme that was substantially similar to the scheme being practiced by Defendant Perez and Defendant EMPOWER H.I.S., and their affiliates, at Putnam County Hospital.

113. Defendants had a duty to disclose those facts to HMC.

114. Defendants intentionally concealed or suppressed those facts with the intent to defraud HMC.

115. Defendants intentionally concealed or suppressed those facts for the purpose of inducing HMC to act differently than it would have if HMC had known the concealed and suppressed facts.

116. HMC was unaware of the facts and would have acted differently if it had known the concealed or suppressed facts in that HMC would not have executed the Conversion Agreement, the Transition Agreement and the Amended Operating Agreements, or otherwise cooperated with Defendants' takeover of the HMC Hospitals.

117. As a result of the concealment or suppression of the facts, HMC is entitled to recover damages in an amount in excess of $75,000.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgment interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

### FOURTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty against Defendants Nusbaum, White and Perez)

118. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

119. Defendants Nusbaum, White and Perez were, at all times relevant to the facts herein alleged, the Managing Directors of the HMC Hospitals and, in complicity with the other Defendants, controlled all business and financial affairs of the HMC Hospitals.

120. As Managing Directors of the HMC Hospitals, Defendants Nusbaum, White and Perez owned the highest level of fiduciary duty of care and loyalty to HMC as the minority member/shareholder, both under the Amended Operating Agreements and under law and thereby were obligated to conduct the business and financial affairs of the HMC Hospitals lawfully in a prudent business manner and to take all actions and make all votes in good faith consistent with such duty.

121. Defendants Nusbaum, White and Perez breached their fiduciary duties by causing the HMC Hospitals to engage in the illegal and fraudulent billing scheme, by causing HAC and EMPOWER H.I.S. to carry out said scheme and by the acts of misfeasance and malfeasance herein alleged, including but not limited to those set forth in paragraphs 54 through 94 above

122. As a result of the breaches of fiduciary duty by Defendants Nusbaum, White and Perez, HMC suffered damages in an amount in excess of $75,000 as will be proved at trial.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgment interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty against Defendant HAC)

123. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

Case 4:18-cv-00601-NKL   Document 57   Filed 03/14/19   Page 27 of 30

124.    Defendant HAC was, at all times relevant to the facts herein alleged, the majority member/shareholder of the HMC Hospitals and, in complicity with the other Defendants, controlled all business and financial affairs of the HMC Hospitals.

125.    As the majority member/shareholder of the HMC Hospitals, Defendant HAC owned the fiduciary duty of care and loyalty to HMC as the minority member/shareholder, and thereby was obligated to conduct the business and financial affairs of the HMC Hospitals with the utmost care, honesty, loyalty, and fidelity and to take all actions and make all votes in good faith consistent with such duty.

126.    Defendant HAC breached its fiduciary duty to HMC by causing the HMC Hospitals to engage in the illegal and fraudulent billing scheme, by causing EMPOWER H.I.S. to carry out said scheme and by the acts of misfeasance and malfeasance herein alleged, all of which were undertaken to enrich HAC and its principals and to serve their self-interest.

127.    As a result of the breaches of fiduciary duties by Defendant HAC, HMC suffered damages in an amount in excess of $75,000.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgment interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION
### (Conversion against all Defendants)

128.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 herein as if fully set forth.

129.    HMC owned or had the right to the use and possession of its business accounts at US Bank at the time of Defendants' interference with, and exercise of dominion and control over, and conversion of such accounts to their own use.

130. HMC owned an interest in the cash assets of the HMC Hospitals at the time of Defendants' misappropriation of funds in the amount of $2,000,000 or more belonging to the HMC Hospitals.

131. Defendants intentionally interfered with and exercised dominion and control over the accounts and **misappropriated the funds** of the HMC Hospitals, and such interference and **misappropriation** deprived HMC of its possession or use of the accounts and its ownership interest in the funds.

132. As a result of the interference of Defendants, HMC suffered damages in an amount in excess of $75,000.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000 to be proved at trial, for punitive damages, for their costs and attorney's fees and pre-judgement interest as may be allowed by law, and for such other relief as the Court may deem just and proper.

## SEVENTH CAUSE OF ACTION

### (Breach of contract against HAC)

133. Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 97 above.

134. Defendant HAC breached the Amended Operating Agreements of the HMC Hospitals by causing, or in the alternative, knowingly permitting, the individual Defendants to breach their fiduciary responsibilities under the Amended Operating Agreements and by failing to insure that all business of the HMC Hospitals be carried out lawfully.

135. Defendant HAC further breached the Amended Operating Agreements by ceding to Defendant Perez the control of the principal operations of the HMC Hospitals and defaulting in

requiring that they be managed by three managers as set forth in the Amended Operating Agreements.

136. Defendant HAC fraudulently breached the Conversion Agreement and the Transition Agreement by failing to manage and control the HMC Hospitals in a lawful manner and in good faith.

WHEREFORE, Plaintiffs pray for damages in excess of $75,000, for punitive damages, for their costs herein incurred, for pre-judgment interest and attorneys' fees as may be allowed by law, and for such other and further relief as the Court deems just and proper.


Respectfully submitted,

Wood Law Office LLC

By: /s/C. Brooks Wood
C. Brooks Wood, Mo. Bar 24077
1600 Genesee St., Ste. 455
Kansas City, Missouri 64102
816-469-5005
bwood@bwoodlawllc.com

Attorney for Plaintiffs

I certify that on this 14th day of March, 2019, I filed the foregoing document electronically with the Clerk of the Court by using the CM/ECF system, a true copy thereby to be furnished to all counsel of record.


/s/C. Brooks Wood